UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW JACOB MARSALA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 1:23-cv-1407-JLT-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITYAND AGAINST PLAINTIFF**<br><br>**(Doc. 15, 17)** |

### I.   Introduction

Plaintiff Andrew Jacob Marsala seeks judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act.[1]

### II.   Factual and Procedural Background

Plaintiff applied for benefits on October 8, 2021, alleging disability as of March 16, 2020. The Commissioner denied the applications initially on January 12, 2022, and on reconsideration on March 29, 2022. AR 105, 128. Plaintiff appeared for a hearing before an ALJ on May 25, 2023. AR 52–82. The ALJ issued an unfavorable decision on June 13, 2023. AR 28–51. The Appeals Council denied review on August 18, 2023 (AR 1–7) and this appeal followed.

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge. Docs. 10, 11.

### III.  **The Disability Standard**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.     The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of March 16, 2020.  AR 33.  At step two the ALJ found that Plaintiff had the following severe impairments: depressive disorder, generalized anxiety disorder, post-traumatic stress disorder, degenerative joint disease of the left knee, meniscal tear and Baker's cyst of the left knee, diverticulitis, degenerative disc disease of the lumbar spine with sciatica, degenerative disc disease of the cervical spine, and obesity.  AR 34.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 37.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. 404.1567(b) with the following limitations:

> The claimant can occasionally push and/or pull with the left lower extremity. The claimant can have no exposure to hazards, crawling or climbing ladders, ropes and scaffolds. The claimant can occasionally balance, crouch, kneel, stoop and climb ramps and stairs as those activities are defined in the D.O.T. and SCO. The claimant can never have exposure to noise environments greater than moderate/level 3 as

>defined by the SCO. The claimant must avoid concentrated exposure to temperature extremes. The claimant requires the ability to alternate between sitting and standing up to every thirty minutes, while remaining on task. The claimant can understand, remember and carry out simple instructions. The claimant can have occasional interactions with supervisors and coworkers, but no public contact. The claimant is unable to perform work requiring a specific production rate such as assembly line work, or work that requires hourly quotas.

AR 39.

At step four, the ALJ found that Plaintiff was unable to perform his past relevant work. AR 44. At step five, in reliance on the Vocational Expert's testimony, the ALJ found that considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform the following jobs existing in significant numbers in the national economy: "housekeeper cleaner", photocopy machine operator, and agricultural produce sorter. AR 46. If Plaintiff were further limited to two hours of standing and walking—i.e. sedentary work—there would still be available jobs, namely document preparer and addressing clerk. AR 46. Accordingly, the ALJ concluded that Plaintiff was not disabled since his alleged disability onset date of March 16, 2020. AR 47.

## V.     Issues Presented

Plaintiff asserts two claims of error: 1- "The ALJ's RFC determination is unsupported by substantial evidence as he failed [to] properly evaluate the medical opinions of record relating to Plaintiff's mental impairments in accordance with the prevailing rules and regulations," and 2- "The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer any reason for rejecting Plaintiff's subjective complaints." MSJ at 3, Doc. 15.

### A.     Mental RFC Opinions

#### 1.     Applicable Law

Before proceeding to steps four and five, the ALJ determines the claimant's residual functional capacity (RFC) which is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. § 416.945(a)(1). The RFC must consider all of the claimant's impairments, severe or not. 20 C.F.R. §§ 416.920(e),

416.945(a)(2). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. *Id.* "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### 2. <u>Analysis</u>

Plaintiff's treating psychologist—Dr. Medvene—completed a medical source statement

dated April 26, 2023 in which Dr. Medvene opined that Plaintiff had a "poor"[2] ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. AR 793. Dr. Medvene further opined that Plaintiff had a "fair"[3] to "poor" ability to interact appropriately with co-workers and supervisors. AR 793. Dr. Medvene further opined that Plaintiff had a "good" or "fair" ability to perform other mental activities. AR 793. Dr. Medvene also provided a narrative letter dated April 13, 2023.

The ALJ found the opinion unpersuasive. Plaintiff disputes that finding, explaining as follows:

> First, it is important to note that the ALJ wholly failed to fully account for the examination findings contained in Dr. Medvene's opinion. Specifically, the ALJ summarized Dr. Medvene's findings as showing abnormal mood and affect, but otherwise demonstrated that Plaintiff "was alert and fully oriented, he was appropriately groomed and his eye contact was within normal limits. [Plaintiff's] intelligence was average, his memory and cognition were intact and his insight was present and adequate." Ar. 42. However, this accounting is not an accurate reflection of Dr. Medvene's findings noted in the opinion. Specifically, Dr. Medvene noted that the current mental status examination demonstrated Plaintiff had <u>slightly retarded motor activity</u>; <u>slow and soft speech</u>; behavior that was <u>apathetic</u> at times; <u>agitation and irritability</u> at times; <u>slightly distracted concentration</u>; <u>anxious and depressed mood</u>; <u>blunted affect</u>; and <u>obsessive thought content</u>. Ar. 790-92. The ALJ must not mischaracterize, misattribute, or selectively review statements or opinions made in the evidence . . . Yet, that is precisely what the ALJ did here ignoring large portions of Dr. Medvene's examination findings that were supportive of the opined limitations. This does not constitute substantial evidence to reject Dr. Medvene's opinion.

MSJ at 5, ECF No. 15 (emphasis added) (quotations and citations omitted).

However, the ALJ did discuss Dr. Medvene's April 2023 examination findings, albeit at step two. The ALJ simply referred to them as records from the VA without mentioning Dr. Medvene specifically. The ALJ's relevant discussion follows:

> Mental health treatment records from Veteran's Administration Medical Center

---

[2] The form defines "poor" as "The evidence supports the conclusion that the individual cannot usefully perform or sustain the activity." AR 793.

[3] The form defines "fair" as "The evidence supports the conclusion that the individual's capacity to perform the activity is impaired, but the degree/extent of the impairment needs to be further described." *Id.*

6

> show a waxing and waning of mental health symptoms and complaints (Exhibit 5F; Exhibit 4F). In an April 2023 mental status examination, the claimant was cooperative and had <u>slow and soft speech</u> (Exhibit 7F, p. 1). The claimant <u>motor activity was described as slightly retarded</u> (due to pain) and he was described as <u>irritable and apathetic</u> "at times (Exhibit 7F, p. 1). The claimant was alert and fully oriented, although his <u>concentration was described as slightly distracted</u> (Exhibit 7F, p. 2). The claimant's memory was normal and his intelligence was average (Exhibit 7F, p. 2). The claimant's mood was <u>anxious and depressed</u> and his <u>affect was blunted</u> (Exhibit 7F, p. 2). The claimant's thought processes were goal directed and thought content was normal (Exhibit 7F, pp. 2-3). The claimant demonstrate <u>preoccupations about pain and worth</u> and his judgment was intact (Exhibit 7F, p. 3)

AR 35 (emphasis added).

Thus, the ALJ covered every abnormal finding that Plaintiff emphasizes from Dr. Medvene's April 2023 examination, albeit at step two, as mentioned above.

Subsequently—when explaining the reasoning for finding Dr. Medvene's opinion unpersuasive—the ALJ made a broader point about what the mental status examination findings demonstrated as a whole:

> Overall, however, I do not find the medical source statement or letter of April 2023 persuasive. The progress notes generated by Dr. Medvene do not support the April 2023 assessments. The mental status examinations performed by Dr. Medvene show abnormality of mood, but little in the way of other significant findings. <u>On May 14, 2022</u>, the claimant's mood and affect were described as anxious, distressed, flat and expressing loss of pleasure and worry (Exhibit 4F, p. 25). As noted above, this supports the limitations included in my residual functional capacity finding. Otherwise, the claimant was alert and fully oriented, he was appropriately groomed and his eye contact was within normal limits (Exhibit 4F, p. 25). The claimant's intelligence was average, his memory and cognition were intact and his insight was present and adequate (Exhibit 4F, p. 25). <u>Mental status examinations performed from July 13, 2022 to January 2023 also showed abnormality of mood and affect but were otherwise normal (Exhibit 4F, pp. 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23).</u> Thus, the significant limitations assessed are not supported by the therapist's own treatment notes. I also note that in the April 2023 letter, Dr. Medvene relies heavily on the claimant's subjective complaints. Dr. Medvene notes that the claimant reported that he hears noises other people do not hear and his reports of anger outbursts related to increased stress and ruminating thoughts (Exhibit 6F, p. 1). These symptoms are not reflected in the treatment notes from Veteran's Administration Medical Center. Dr. Medvene reported that the claimant has difficulty being around other people, loud noises or people coming up to him from behind (Exhibit 6F, p. 1). For this reason, I included the limitations that the claimant can have no more than occasional interaction with supervisors and coworkers and that he can have no public contact.

> AR 42 (emphasis added).

Here, the ALJ described 13 examinations from May 2022 through January 2023 which showed abnormalities of mood and affect but which were otherwise normal. *Id.* (citing AR 675–705). Plaintiff does not dispute the ALJ's characterization of those examination but rather focuses on a single paragraph within the ALJ's decision and concludes that the ALJ ignored the April 2023 examination findings. That is not correct.

Plaintiff's intention may have been to suggest that the ALJ should have referenced the April 2023 examination abnormalities <u>again</u> when discussing Dr. Medvene's opinion, and/or that the ALJ likewise should have recognized the April 2023 examination abnormalities as an exception to the ALJ's point about generally normal mental status examinations. If this was in fact Plaintiff's intention, that is a distinct point requiring a more nuanced discussion than what Plaintiff provided here when inaccurately asserting that the ALJ ignored the April 2023 examination. Notwithstanding, the point would not be a persuasive one because the single examination Plaintiff relies on from April 2023—which accompanied Dr. Medvene's functional assessment—is significantly outweighed by the 13 examinations from May 2022 to January 2023 that the ALJ relied upon in finding Dr. Medvene's opinion unpersuasive. The April 2023 examination is not the only relevant examination simply because it accompanied Dr. Medvene's functional assessment.

Finally, Plaintiff disputes the ALJ's commentary about Dr. Medvene's reliance on Plaintiff's subjective reports:

> The ALJ then continued this trend of mischaracterizing the record when he stated that Dr. Medvene relied upon Plaintiff's subjective complaints. The ALJ only noted one instance where Dr. Medvene actually noted Plaintiff's subjective reports; his reports of hearing noises and having angry outbursts. Ar. 42. <u>However, there is no indication that Dr. Medvene actually relied upon the reports in formulating the functional assessment of Plaintiff's abilities</u>. See Ar. 793. The ALJ is not permitted to fabricate rationales for dismissing an opinion that is directly contraindicated by the evidence of record.

> MSJ at 6 (emphasis added).

The ALJ did not state that Dr. Medvene relied upon Plaintiff's subjective reports <u>in formulating the functional assessment</u>. Rather, the ALJ stated "I also note that <u>in the April 2023 letter</u>, Dr. Medvene relies heavily on the claimant's subjective complaints." AR 42 (emphasis added).

Indeed, the April 2023 letter is largely a narrative of Plaintiff's experiences and subjective complaints. *See* AR 787–89 ("Plaintiff describes his chief complaints as . . . he states his emotional problems began because of his 14 years in the navy . . . he remarked of his pain, depression, anxiety, and PTSD . . ."). The letter (AR 787–89) was <u>attached to</u> the functional assessment (AR 790–94) and provides contextual information about the treating relationship, Plaintiff's experiences in the military, and his symptoms. The ALJ's critique of the letter was accurate but unnecessary to support the rejection of Dr. Medvene's <u>separate</u> functional assessment, which the ALJ supported with reference to the 13 mental status examinations as quoted above.

### B. <u>Subjective Complaints</u>

#### 1. <u>Applicable Law</u>

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated

by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other symptom;  and 7- Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3)

### 2.   **Analysis**

Plaintiff's second claim of error[4] is that "The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer any reason for rejecting Plaintiff's subjective complaints." MSJ at 6 (emphasis added).

Despite this statement, Plaintiff does not discuss what work-related limitations were warranted, which subjective complaints would support those limitations, nor how the RFC falls short.  Plaintiff's analysis does not begin until three pages in where Plaintiff states "While Defendant may also attempt to argue that the ALJ noted Plaintiff was able to perform activities of daily living in discounting her[5] subjective complaints (Ar. 43), this would do nothing to clear the ALJ's decision of errors." MSJ at 9.  Importantly, Plaintiff here does not mention any of the activities in question, rather this statement suggests that the Court should independently analyze the ALJ's consideration of the same.

---

[4] Notably, the 1,400-word argument is a nearly verbatim copy from a prior case, with a total of 18 words changed between the two.  *See* 1:23-cv-01682-JLT-GSA, (ECF No. 15 at 9–12).

[5] This may be a typo but is more likely the result of a copy and paste, presumably from a third case involving a female claimant.

Relevantly, the ALJ stated as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. AR 43.

Contrary to Plaintiff's argument, the ALJ did not wholly reject Plaintiff's subjective complaints or associated limitations. For example, with respect to his difficulty with extended sitting and standing, the RFC reflects that he must alternate between the two every thirty minutes. With respect to Plaintiff's difficulty being around people, loud noises, and people coming up to him from behind, the RFC reflects that Plaintiff can have no more than occasional interaction with supervisors and coworkers, and no public contact. Plaintiff needed to explain where the RFC fell short. *See Juniel v. Saul*, No. 1:20-CV-0421-JLT, 2021 WL 2349878, at *7 (E.D. Cal. June 9, 2021) ("the ALJ clearly acknowledged that Plaintiff reported 'anxiety in crowded situations' in November 2016 and 'continued anxiety in crowds' in September 2017. Plaintiff fails to show this limitation to which he testified—and the ALJ acknowledged remained in the treatment records—was not properly accounted for in his residual functional capacity, which indicated Plaintiff 'could not have public contact' and limited interaction with co-workers.") (citations omitted).

In sum, Plaintiff neglected to identify, summarize, or cite any testimony or subjective complaint concerning his pain and other symptoms. Plaintiff likewise neglected to explain what limitations his subjective complaints would support, or how the RFC fails to account for them. Thus, there is no basis to remand the matter for further evaluation of his subjective complaints.

### VI.   Recommendations

For the reasons stated above, substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, the recommendation is as follows:

1.   That Plaintiff's motion for summary judgment (Doc. 15) be **DENIED.**

2. That Defendant's cross-motion (Doc. 17) be **GRANTED.**

3. That the decision of the Commissioner of Social Security be **AFFIRMED**.

4. That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

### VII. Objections Due Within 14 Days

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **March 21, 2025**              /s/ Gary S. Austin
                                       UNITED STATES MAGISTRATE JUDGE